Good morning, your honors. Good morning. May it please the court, my name is Nancy Alexander and I represent petitioner Mr. Jose Alfredo Bustos-Bustos. I would like to reserve three minutes of my time for rebuttal. Since his prior removal order, Mr. Bustos' entire family fled his hometown in Guerrero, Mexico. That was after a Los Cuernos gang member threatened his brother-in-law, Luis, with death at gunpoint. He did so from the back of a municipal police car. Then Los Cuernos gang members hunted down Mr. Bustos' brothers and father and threatened them with death. They then beat his brother to the point of hospitalization. Separate and apart from this, after Mr. Bustos informed on a Mexican drug trafficking organization to U.S. law enforcement, he received a threatening video. In that video, there were three men holding assault-style weapons wearing masks. In explicit terms, one of the men threatened Mr. Bustos and his family with harm. The man in the video stated, we have people everywhere. Here, we have people all over the border, everywhere, you will not hide. Despite these facts and failing to consider them, the agency denied Mr. Bustos' motion to reopen to seek withholding of removal and relief under the Convention Against Torture. The agency appeared to consider the entire merits of Mr. Bustos' withholding and CAT claims, limiting its analysis to that that's required for a motion to reopen. The sole basis for the agency's denial here was a failure to establish a prima facie case for withholding and CAT relief. There is no dispute here as to whether changed country conditions were demonstrated. They were. Rather, the agency found Mr. Bustos did not establish a prima facie case based on three issues. The acquiescence issue in the CAT analysis, the internal relocation issue on the CAT analysis, and the particularly serious crime issue in the withholding and removal analysis. With all three of these issues, the agency did not apply a prima facie standard to Mr. Bustos' case. As this court provides in Selene v. Lynch, once changed country conditions are found, as was done here, a motion to reopen need not establish a prima facie or a motion to reopen need only establish a prima facie case for release and need not conclusively establish that a petitioner warrants relief. This is a reasonable likelihood standard that the statutory requirements for relief have been satisfied. In denying Mr. Bustos' motion to reopen, the agency did not apply this reasonable likelihood standard. On the acquiescence issue in Mr. Bustos' CAT claim, the agency not only failed to apply the prima facie standard, but also did not apply this court's actual knowledge or willful blindness legal standards or consider record evidence of direct police involvement in torture. On the internal relocation issue in Mr. Bustos' CAT claim, demonstrating an inability to relocate is not a regulatory requirement to establish a CAT claim. It is therefore not part of a CAT claim and should not have been considered at the motion to reopen phase. So it was your argument that in exercising their discretion that they were reviewing the IJ's decision for abusive discretion, correct? Yes, Your Honor, and that's this court's standard as well. And that's what we're reviewing, the agency's decision for abusive discretion or the BIA. Right, right. So it's your argument that they didn't apply the correct law? That they didn't apply the correct standard to the motion to reopen, and they didn't apply the correct law as well, which the abusive discretion standard... You can establish abusive discretion if you determine that the agency acted arbitrary, capriciously, or didn't follow the law. And under our case law, we also add in, because we're dealing with an administrative agency, they failed to give a reasoned explanation. So I'm just trying to understand where you fit this. I think they didn't apply the correct legal standard, and I think they also did not give a reasoned explanation. That's particularly true in the acquiescence analysis. There, the immigration judge never came to a conclusion on the acquiescence issue, and the board summarily affirmed. So there's never really any explanation of why Mr. Bustos failed to meet the acquiescence standard. And then also, within that acquiescence analysis, the agency never looked at the actual knowledge or willful blindness legal standard, and that failure to apply that legal standard is an abuse of discretion. Your objection is with the limited explanation that was given in the BIA's decision? I think that's part of it, but another part is that the agency did not consider record evidence. There was significant record evidence of acquiescence here, and that failure to consider record evidence is also an abuse of discretion. CAT regulations require that the immigration judge consider all record evidence, including affidavits, country conditions, police reports, and much of that was submitted here, yet the agency's analysis never mentions it. So how much does the agency have to say here? I think they at least have to acknowledge that this evidence exists and that they considered it. Often this court will look at, okay, did the agency make a catch-all phrase that they considered all evidence in the record, and here that wasn't even done. So there's no indication that either the judge or the immigration judge, or I'm sorry, the judge or the Board of Immigration Appeals considered things in this record like a declaration from Mr. Bustos' sister about when her partner was threatened with death from the back of a municipal police car. There was no indication that the agency considered a prosecutor's report made by Mr. Bustos' brother-in-law about when he was threatened with death by gang members. And that goes directly to the acquiescence analysis because both of those pieces of evidence indicate that the municipal government of the local town, Bayula, was directly involved in or with the Los Coronados gang members. So that's an analysis that goes directly, or an issue that goes directly to the acquiescence issue. For example, the declaration and prosecutor's report indicated that Los Coronados gang members arrived in a patrol car, and when the gang members threatened Mr. Bustos' brother-in-law, they were seated in the right seat in the patrol car vehicle and were accompanied by preventative municipal police officers. Local police officers then also helped the gang member escape in their patrol car and helped him to get out of town. And later in the report, when Luis and his family reported this to military officials, so not the local officials of Bayula, but military officials, those military officials further offered no protection and instead told the family that they would be better off if they fled. So your objection is that they say that they considered that, you know, whether they spelled it out or not, but at least made reference to it, and then say that doesn't rise to a prima facie level. Is that what you think? Right, so there's no indication they considered this evidence, evidence which would, which demonstrates a prima facie case. So yes, that evidence was never considered and a prima facie standard was never applied to that evidence. The prima facie standard being a reasonable likelihood that Mr. Bustos qualifies for conventioning. He doesn't have to prove, he doesn't have to prove his claim at this stage. Exactly. That he will prevail. I'm sorry, what was that, Gerber? He doesn't have to prove in his motion to reopen that he will prevail once he gets a chance to put on his claim for cat relief before CIJ. Exactly. All he needs to show is a reasonable likelihood that the statutory elements are met. And I think... What's your argument with respect to relocation? So with that, the prima facie standard really comes into play there because internal relocation is not a regulatory element of a cat claim. So there's nothing that a non-citizen needs to prove with regard to internal relocation. But I don't read the, when I'm reading the decision, I don't read that he's saying that's part of the prima facie claim. I mean, it's in the paragraph and he's talking about up above about government acquiescence. But because it's a legitimate consideration, although he doesn't bear the burden and the government doesn't have to bear the burden, you know, to show absolutely the opposite. The issue is legitimate for the board to consider, correct? I don't believe that it is, Your Honor, at this stage. I think certainly when the immigration judge and when the board are considering the merits of his cat claim, certainly the regulations require them to consider internal relocation among multiple other factors. But in making a prima facie case, Mr. Boussos doesn't need to show that internal relocation is impossible. No, he doesn't have to show it's impossible. But if the board says they've looked at it and there isn't evidence there, there is as to, I think, the state of Colima and Guerrero, but nationwide that evidence is missing. Why isn't that a legitimate statement for them to make? I think it doesn't apply the prima facie standard, but also it, again, doesn't look at record evidence. When they're looking at Coyotla, they're looking at the Los Cornudos gang, and they considered that, but they didn't review the threatening video that Mr. Boussos received from- Do we know where that came from? It sounded like it was from- Sorry, what? Is there evidence of source? It, based on what is said in the video, and based on the prior history of when Mr. Boussos informed on Mexican drug trafficking organizations, it sounds like it's from Mexican drug trafficking organizations from the border. And in fact, the man in the video states, we have people everywhere, we have people all over the border. That is evidence of potential for harm outside of the country. Overall, your honors, we are asking that this court grant the petition with insertions to the agency to grant the motion to reopen so that Mr. Boussos' withholding NCAT claims can be heard. And with that, I would like to reserve the remainder of my time for rebuttal. You may. Spurlock. May it please the court. Matthew Spurlock on behalf of the United States. The question here of whether the board acted arbitrarily or irrationally in coming to the decision that the petitioner, in denying petitioner's motion to reopen. The board, in considering the claims relating to petitioner's NCAT claim, clearly applied the reasonable likelihood standard that petitioner complains that they did not apply. That's on page three of the word explicitly says, he did not demonstrate a reasonable likelihood that the harmony may suffer in Mexico at the hands of the drug trafficking organizations would be inflicted by the instigation or the consent or acquiescence of a public official. So the question of standard of review, this court standard review, of course, is the abuse of discretion standard. And in this case, the agency did not abuse their discretion in coming to this conclusion because they did not act arbitrarily or irrationally, and they did not act contrary to the law in play. Mr. Spurlock, excuse me, can you point me with respect to to flee after they refused to investigate where they engaged with the record evidence that they were present, the police were present for torture by the gang and drove torturers to and from the site, the torture site. Is there somewhere in those decisions that the BIA or the IJ referenced that? No, your honor, that's in the immigration judge's decision. The immigration judge specifically refers to the fact that there is corruption in in Mexico, that there is police corruption. And and that's that's part of their decision. They don't specifically address the instances they brought up, but there's no reason to believe that they didn't consider those specific instances. And moreover, there's no indication, first of all, petitioner himself was never tortured. And it's it's not clear whether those specific events rose to the level of torture. It does show that there is consistent with what the immigration judge found. There is a high degree of high degree of police corruption in Mexico, including in the area where petitioner's hometown is from. But in considering that, you have to you have to look back at what the the rule is here, is that no person will be deemed to have breached a legal responsibility to intervene if such person is unable to intervene or if the person intervenes but is unable to prevent the activity that constitutes the torture. So in this case, although petitioner makes the argument that when they went to the military force in his hometown, his family, he wasn't there. But when his family went, that the military told him, told the family that they couldn't help them and it would be better for them to leave. But that doesn't constitute acquiescence. It doesn't constitute acquiescence. It doesn't constitute acquiescence. And in fact, although petitioner and their reply brief, they distinguish Garcia Milan and Andrade's a little bit. But the case that Garcia Milan relied on in coming into that ineffectiveness standard with regard to acquiescence was Tamara Gomez, which is a Fifth Circuit case. That's at 447 F3rd 346. And in that case is more similar to this case. That's a case where the police informed the petitioner that they could not they couldn't protect the petitioner's family from Colombian narco terrorists. And the court and Tamara Gomez found that that was not considered to be acquiescence. The fact that they the fact that the local government or the local military says that we aren't able to protect you, you need to leave. That in itself is ineffectiveness. That's not necessarily acquiescence. And petitioner also brings up the fact that you drive distinction between being unable and or being unwilling. Well, your honor, in this context of the the cat claim, there there is no unable or unwilling distinction because that's a separate asylum distinction that we've discussed of whether of whether the petitioner meets the the ability to show that the government would be unable or unwilling to protect the applicant. And that's not the standard that we had before us. That's a difference. It's it's not just it's not just I'm not suggesting that the the the government officials refusal or, you know, complete ineffectiveness or ineffectiveness to do anything is not would would not show or tend to show possibly acquiescence. But I don't think that my my concern here is is that, you know, it's pretty clear that they don't have to prove their case. You know, they don't have to show that they're going to prevail on the motion, you know, on their claim for capital. If they just have to show, you know, there's a reasonable likelihood that we might be able to establish a claim and reopen it. That's all. I mean, that's what I understand. And we say that that you take the affidavits or the declarations or the information that's provided, you take it as true unless, you know, it's just unrealistic. You should you shouldn't accept it. But that doesn't seem to be the issue here. That's correct, John. There's no there's no specific issue with credibility or whether the story irons out or not. That's that's not what's at issue. And one could certainly suggest that, well, perhaps they may they maybe they made the reasonable likelihood standard. Maybe they didn't. But I would argue that this court's standard review in considering whether the board considered the reasonable likelihood standard or not is whether they abuse their discretion in coming to the conclusion that they didn't meet the reasonable likelihood standard. So the court is certainly open to consider that. But we are arguing that the court considered the likelihood standard, the board, I'm sorry, the board considered the likelihood reasonable likelihood standard and appropriately determined that their evidence did not meet that standard. And if I could just briefly go back to one of the arguments that petitioner makes concerning acquiescence is that the the local officials of the municipality where he's from have provided warnings to him individually and his family that they should not go back there. And although that's it's it's it's it's kind of a horrible reality that you have officials that would warn you, we cannot offer you protection. We would argue that that that sort of alone is indicates that they're not acquiescing. Why would a why would a municipal official provide a warning to somebody if they were acquiescing they were going to acquiesce in their torture? It sounds to me they're doing what they can to prevent torture of the petitioner returning back. And and that would lead me to my next argument which would be the relocation issue. And the the agency also didn't abuse their discretion in finding that considering the could relocate into a different region of Mexico. And and under Maldonado the the board and the immigration judge must consider all evidence and that includes relocation as one factor. And as as was discussed that this does not place a burden on the petitioner to show that relocation is impossible. But on the same at the same time it does not shift the burden to the government side to show that that they have to specifically find that this person is. The issue here you know you I think you've stated it correctly because there isn't a burden with respect to relocation in CAT. But I think council raised two points that would be helpful for you to respond to. First she in her reading of the BIA decision she says that the BIA kind of implicitly because of the use of prima facie on the first part of the paragraph imposed some kind of prima facie requirement on petitioner on relocation. And then the second point is the point that the video basically says we're everywhere and we can get you anywhere. So if you would respond to those two points I'd appreciate it. Yes your honor. The first point I would respond to the the board the board does not go into great detail on the issue of relocation of course. And to to get this information you need to look at the immigration judge's decision which is affirmed by the board. It's it's not a summary decision but they they find that the that the immigration judge's call on this was correct. And the immigration judge actually finds that the the Los Cuernudos gang that petitioner claims to be the most afraid of from his hometown they they correctly identify that the record evidence provided by the petitioner doesn't indicate that Los Cuernudos are active anywhere besides his hometown. Even his even his evidence about the home state where he's from Guerrero it there's a there's a long article I think it's from the University of San Diego where they discuss all the different threats and the gangs that are active in Guerrero. And it doesn't mention as far as I was able to tell Los Cuernudos it doesn't mention that gang. And so I I think with at least respect to that there's no there's no indication that Los Cuernudos are a a nationalized type of drug gang. And I would I would contrast that with the court's case in Xochitl which is 962 F 3rd 1175 in which the court found that Los Zetas which is a very large drug organization in Mexico uh they concluded that um finding relocation with Los Zetas was sort of a was was problematic because it was such a broad gang that there was no way to really be able to tell whether you could actually relocate safely anywhere in Mexico because they had such a far reach. But let me let me ask you this so if you read the last sentence of that paragraph it says the immigration judge properly noted the absence of evidence suggesting that this same risk exists countrywide. And if there's no real challenge to the credibility of the video doesn't that show that there is some evidence suggesting that this guy might have a nationwide problem? Why doesn't that meet why doesn't that the prima facie standard? Well your honor I think if you look at the if we're looking at the video that petitioner provided that was a post on Facebook uh sent to his sister I think the question there is uh first of all the the immigration judge in conjunction with the evidence was uh it was speculative there wasn't there wasn't any clarity really about what the threat was who they were you don't you can't tell from the record specifically which gang they're affiliated with and although apparently one of the people in the video suggests we're everywhere but we're at the border but it doesn't really indicate that they would where they would be or what sort threat that announced to um and I would just argue that I think that the agency didn't abuse their discretion in finding that that video didn't indicate a reasonable likelihood uh that um that petitioner would face torture based on uh you know if if he was able to relocate away from um Los Granados I mean clearly how about if you added to that the fact that uh a prosecutor in Oregon uh referred to Mr. Bustos Bustos is providing a goldmine of information and a number of different uh drug arrests uh in that state when you add those things together doesn't that at least get you over the threshold that somebody should have uh said something about that well it it would have it would have made sense if they would have mentioned that but they they considered it uh I think based on just the the the breadth of what the evidence was was just we don't know who those people are and it it appears to be speculative whether or not this these individuals have the the power to do what they're going they say they're going to do or they're that they have the means or where they're located so um whether or not that would prevent relocation uh is is not clear enough to not establish a reasonable likelihood that he would be tortured if he if he could not relocate I see my time has run out if there are no other questions and I'll just conclude can I just make a comment before we pass this on um this this case has compelling facts and there are two other immigration cases that were on our docket it's also compelling backstories I just want to um remind uh you and you might pass this on to your senior leaders the Ninth Circuit has a really great mediation office uh there have been cobwebs growing on it with uh immigration cases over the last four years in the appropriate case I really hope that the your office takes a strong look at whether it matters for either doing justice or uh saving uh resources or avoiding law that the government doesn't want that that you look into the possibility of mediating cases in the future I will pass that on your honor thank you thank you very much thank you thank you Mr. Spurlock you have some time for a rebuttal Ms. Alexander thank you your honors yes here um the agency did not recognize that there are two distinct sources of potential torture both of course Cornudos gang and Coyula based on um his family's political beliefs there and the drug trafficking organization at the border after he informed on drug trafficking uh that drug trafficking organization um and those two different sources of torture were never considered together that this requires in Cole versus Holder that the two sources of torture be considered together in the aggregate and that wasn't done here um no real mention there's maybe one mention of a video but no real analysis of that video throughout the whole agency's decision uh with regard to internal relocation um the case Xochitl Jaime's really supports a finding that here um Mr. Bustos has demonstrated that he can't internally relocate uh the the IJ here properly noted the absence of evidence that the same risk that exists for Mr. or sorry the the board of irrigation appeals found that the IJ properly noted an absence of evidence suggesting the same risk that exists for Mr. Bustos and Coyula exists countrywide and similarly in Xochitl Jaime's at page 116 or 1186 um this court disapproved of a noting of an absence of evidence because that also demonstrates um that the burden has been placed on the non-citizen to to demonstrate the inability to relocate I think also in um Xochitl Jaime's what's the proper construct because you're trying to meet yourself coming and going it is proper I think you would agree that they could consider relocation correct I mean our default position is that at the prima facie stage they should not be considering internal relocation I'm just asking in general for for purposes of cat relief relocation is an issue can be part of the analysis correct of course of course yeah and when you say absence of evidence on that does that necessarily mean that the burden is on the petitioner I think that's what the court found in Xochitl Jaime's is that that does indicate that the that the immigration judge put the burden on the petition all right um and I think with that your honors we would ask that this court remand with instructions to the agency to grant this motion to reopen thank you thank you I'd like to thank you both for the argument in the case Bustos Bustos versus Rosen is submitted and that completes the calendar for this morning and we're adjourned this court for this session stands adjourned
judges: McKeown, Paez, Orrick